# Huffman et al. v. Commonwealth.

(Decided November 14, 1930.)

LOGAN & LOGAN for appellants.

J. W. CAMMACK, Attorney General, and HOWARD BLACK for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

Thomas G. Van Meter and the appellants, Thomas Huffman and Harlan Carroll, were sureties on the bail bond of Leo Wilkins, who had been indicted by the Edmonson county grand jury for the offense of unlawfully and maliciously cutting Wash Duvall with intent to kill him, a felony. Wilkins appeared at his trial and made defense to the indictment. The jury found him guilty of the offense of cutting in sudden affray, a misdemeanor included within the felony for which he had been indicted, and fixed his punishment at a fine of $300. After the jury had rendered its verdict, Wilkins was, by the court, with the consent of Van Meter, the only one of the three bondsmen who was in court, permitted to go to his home for the purpose of securing a surety to go on his appeal bond. Wilkins returned to the court the next day, but left again without having executed his appeal bond and has, so far as this record shows, never been heard from since. The commonwealth then took a forfeiture of the bail bond of Wilkins, and a summons was issued against the sureties to show cause why a judgment should not be entered against them for the amount of the fine and costs that had been adjudged against Wilkins. Van Meter made no defense, but Carroll and Huff-

man filed a response setting up in substance the facts above outlined. A demurrer to this response was filed by the commonwealth and sustained by the court. Carroll and Huffman declining to plead further, the court entered judgment against them in the sum of $300 and the costs of the Wilkins prosecution, together with the costs of this proceeding. Carroll and Huffman now move this court to grant them an appeal from this judgment. Van Meter apparently is content with the judgment, for he has taken no steps to reverse it. The bail bond signed by the appellants for Wilkins followed substantially the form prescribed by section 82 of the Criminal Code of Practice, which provides:

"A B, being in custody, charged with the offense of (naming or briefly describing it), and being admitted to bail in the sum of —— dollars, we, C D of (stating his place of residence), and E F (stating his place of residence), hereby undertake that the above-named A B shall appear in the —— court —— day of its —— term (or before the judge of —— county court, on the —— day of ——), to answer said charge, and shall at all times render himself amenable to the orders and process of said court in the prosecution of said charge; and, if convicted, shall render himself in execution thereof; or, if he fail to perform either of these conditions, that we will pay to the Commonwealth of Kentucky the sum of —— dollars."

Section 93 of the Criminal Code of Practice reads:

"If the defendant fail to appear for trial or judgment, or at any other time when his presence in court may be lawfully required, or to surrender himself in execution of the judgment, the court must direct the fact to be entered on the record, and thereupon the bail bond, or the money deposited in lieu of bail, is forfeited."

The commonwealth relying upon these two sections of the Code and the case of Commonwealth v. Turpin, 98 Ky. 9, 32 S. W. 133, 17 Ky. Law Rep. 546, argues that the judgment herein appealed from is correct and should be affirmed.

Sections 183 and 229 of the Criminal Code of Practice read:

Section 183. "If the indictment be for a felony, the defendant must be present, and shall remain in actual custody during the trial; unless his bail appear personally in court, and consent that he may remain on bail, in which case he shall be placed in actual custody when the case is finally submitted to the jury. If he escape from custody after the trial has commenced, the trial may either be stopped or progress to a verdict, at the discretion of the commonwealth's attorney; but judgment shall not be rendered until the presence of the defendant is obtained."

Section 229. "During the trial of an indictment for felony, the defendant shall be committed to and remain in the custody of the proper officer."

Planting themselves upon these sections and the case of Askins v. Commonwealth, 1 Duv. 275, together with the reasoning of the court in the cases of Willis v. Commonwealth, 85 Ky. 68, 2 S. W. 654, 655, 8 Ky. Law Rep. 653, and Commonwealth v. Skaggs, 152 Ky. 268, 153 S. W. 422, 423, 44 L. R. A. (N. S.) 1064, the appellants insist that the judgment of the lower court is erroneous as to them and should be reversed.

In the Askins case, the facts were these: One Farris had been indicted for a felony. He executed a bail bond in accordance with the provisions of section 77 of the then Criminal Code, that section being the same as section 82 of the present Criminal Code which we have copied above. Farris appeared at the proper time and was put upon trial, during the course of which he escaped. The question was whether Askins was liable on the bail bond or not. The applicable sections of the then Criminal Code were section 88, the same as section 93 of the present Criminal Code, and section 184, which is the same as section 183 of the present Criminal Code, with this exception; the latter section provides that the bail of the accused may personally appear in court and consent that the accused shall remain on bail pending the trial. Section 184 of the old Criminal Code contained no such provision. It was held that Askins was not liable. The theory of the decision was that the Code mandatorily required one accused of a felony to be kept in the actual

custody of the court during the trial, and that any attempt by Askins to have controlled the prisoner during the trial would have been illegal. The court, having taken charge of the prisoner and having taken him without the control of the bail, discharged the bondsman. At the end of the opinion, the court said that, for obvious reasons, a different rule would apply to a misdemeanor case. The court did not elaborate on that statement, but the reasons which undoubtedly it had in mind were that, in a misdemeanor case, there is no requirement that the accused shall be in the actual custody of the court during the trial and, in such a case, he may be tried in his absence. See section 185 of the old Criminal Code and section 184 of the present Criminal Code.

In the Willis case, one Strange was indicted for a felony. Willis and others were sureties on his bail bond. Strange appeared when his case was called for trial, but, although an attempt was made to secure a jury, only ten talesmen were accepted. Being unable to complete the jury, the court discharged the jurors that had been selected and reassigned the case. Strange did not appear at the next trial. On a bond forfeiture, his bail was held liable on the theory that Strange's trial had never been entered into when his case was first called. But in the course of the opinion the court said: "After the trial has commenced, the defendant is in custody of the proper officer of the court, and the bail is no longer answerable for his appearance, unless, as provided in section 183, they appear personally in court, and consent that he remain on bail."

In the Skaggs case, one Sanders was surety on the bond of Skaggs, who had been held over on a charge of a felony by an examining court, to the Edmonson circuit court. Later Skaggs was indicted by the grand jury of that court and arrested on a bench warrant. When brought into court, Skaggs was not ready for trial whereupon the court continued his case, remanding him in the meantime to the custody of the jailer. Skaggs later escaped from the jailer and it was sought to hold the surety on his bail bond. The court declined to do so. In its opinion, the court said: "In the case at bar the court took possesson of the defendant and took him out of the custody of his bail, committing him to the custody of the jailor, and while in the custody of the jailor and beyond

the control of his bail he escaped. The commonwealth by her own act took charge of the defendant, and, having so taken charge of him and taken him from the custody of his bail, the bail was discharged.''

Turning now to the case of Commonwealth v. Turpin, 98 Ky. 9, 32 S. W. 133, 134, 17 Ky. Law Rep. 546, relied upon by the commonwealth, we find these facts, which are, with the exception of the nature of the charge upon which the accused was tried, singularly like those of the case at bar. One Portwood was under an indictment for a misdemeanor. He had executed a bail bond with Turpin as his surety. He appeared at his trial, made defense and was found guilty. After his trial, he was allowed by the court to depart from the court for the purpose of obtaining a surety on a replevin bond. He escaped. Turpin was held liable on the bail bond for the amount of the fine and costs which had been adjudged against Portwood. We said:

"By the terms of the bail bond, as shown in the record, the undertaking of appellee not only covered the appearance of Portwood in court at a time fixed, but it is further stipulated that he 'shall at all times render himself amenable to the orders and process of said court in the prosecution of said charge, and, if convicted, shall render himself in execution thereof; or, if he shall fail to perform either of these conditions, that he will pay the commonwealth of Kentucky the sum of,' etc. It seems to us that the conditions of this undertaking are not fully met, nor its obligations, as against the surety, fully discharged, merely by the appearance in court of the principal at the time fixed, or by his trial and conviction. By the terms of the bond, appellee has undertaken that Portwood 'if convicted, shall render himself in execution thereof,' and, by the further express terms of the obligation, appellee is to be responsible 'if he shall fail to perform either of these conditions.' It is to be borne in mind, too, that this prosecution against Portwood was for a misdemeanor, and that the trial and conviction could have been had in his absence, and in this respect is unlike a prosecution in a felony case. If he had not appeared in court at all, the fine could still have been imposed, and appellee would clearly have been liable.

Does the fact that he was voluntarily present in court, even when coupled with the fact that he conversed with the clerk about replevying the fine, and left with the promise to return the next day and execute a satisfactory replevin bond, exempt the surety in the bail bond from further liability? It must be remembered, also, that there was no surrender in court by the surety of his principal, such as gives notice that the surety is unwilling to be bound on his obligation or such as might have been resorted to, under the law, for the termination of his liability. It is true that appellee says in his answer that he did surrender him in open court, but he not only fails to prove this, but fails to prove that he himself was in court at all at that term of court, and, by simply proving that he had been present at a previous term with Portwood, raised a strong presumption, at least, that he was not there at the term at which the trial took place. Besides this, there it no order of court found in the record showing a surrender of the principal by the surety; and, as the principal had the right to pay or replevy the fine, the court had no power to commit him to jail, or, at all events, was not bound to do so in the absence of a formal surrender; and in our opinion, the surety was not released from his liability on the bail bond.''

Is there any conflict between the authorities relied upon by the commonwealth and those by the appellants? We think not. In the Turpin case, the accused was charged with a misdemeanor. As the court pointed out, he had never been actually surrendered to the court by his surety. Under the Code, when Turpin went into trial, he was not mandatorily in the custody of the court. He was still under the control of his bail until the court did something to take him from that custody. Hence the bail bond remained in full force and effect and alive according to its terms. But in the Askins case, when the trial was entered into, the defendant, being accused of a felony, was by the mandatory requirements of the Code taken from the control of his bail and put into the custody of the court. This being true, the bail bond was discharged for the reasons set out in the Skaggs case, supra. The commonwealth having repossessed itself of the custody of the accused, the bail bond is thenceforth

54

discharged. The only difference between the provisions of the Code as they were when the Askins case was decided and as they are now is that the surety may consent that the accused shall remain on bail pending the trial. But so far as these appellants are concerned, there is no pretense that they gave any such consent or that they consented that Wilkins could, after the verdict, go in search of a surety for an appeal bond. Van Meter, obviously, had no authority to consent for them. It may be argued that Wilkins, though indicted for a felony having been ultimately convicted of a misdemeanor, the rule in the Turpin case rather than that of the Askins case should be applied; but the answer to that argument, of course, is that the obligation of the bail was entirely discharged when the commonwealth retook possession and custody of Wilkins as it did when it put him on trial for the felony. The bond having then been discharged by this act of the commonwealth, it was no longer in existence when Wilkins was convicted of the misdemeanor. Hence there was no obligation of the bail to further answer for Wilkins.

Such being our views, it follows that the trial court erred when it sustained a demurrer to the response of the appellants. Their motion for an appeal is therefore sustained, the appeal is granted, and the judgment is reversed, with instructions to overrule the demurrer to the response and for further proceedings consistent with this opinion.